UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-10076-CR-MOORE/SIMONTON

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

ARLEY CEBALLO GONZALEZ, and
HUMBERTO CARRAZANA, et al.,

    Defendants.
_____/

### ORDER ON DEFENDANTS CEBALLO GONZALEZ'S AND CARRAZANA'S MOTION TO STRIKE 404(b) EVIDENCE

Presently pending before the Court is Defendant Arley Ceballo Gonzalez's Motion to Strike 404(b) Evidence (DE # 120), which was joined by Defendant Carrazana with respect to the 404(b) evidence that the government seeks to introduce against him (DE # 128).[1]  This motion has been referred to the undersigned United States Magistrate Judge for disposition (DE # 70).  The government filed a response to Ceballo Gonzalez's motion (DE # 125).  A hearing was held on December 22, 2008.  At the conclusion of the hearing, the government was given additional time to file a response to Defendant Carranza's motion (which had been filed on the day of the hearing), and to file a supplemental memorandum which set forth additional details concerning the evidence it seeks to introduce.  Subsequently, the government filed an Amended Notice of Intent to Introduce Evidence Under Federal Rule of Evidence 404(b) (DE # 133).  For the reasons stated below, the Motion to Strike is denied without prejudice to renew at trial.

---

[1] Defendant Cervantes also initially moved to adopt this motion with respect to 404(b) evidence against him, but that motion was denied as moot based upon his decision to enter a plea of guilty.

I. **BACKGROUND**

Defendants Ceballo Gonzalez and Carrazana are charged in 33 counts of this Indictment with conspiracy to commit alien smuggling and the substantive offense of alien smuggling in connection with events that occurred between September 23, 2008 and September 24, 2008, and which culminated in their arrest on the high seas (DE # 51). Co-defendants Alexis Cervantes, Elieten Zaldivar, Reynaldo Marques, Michel Madrigal Lopez, and Brainer Gomez Cruz are also charged with these offenses. Specifically, the Indictment alleges that these defendants conspired to encourage and induce 32 aliens to come to, enter, and reside in the United States, knowing and in reckless disregard of the fact that this would be in violation of the law, and that this conduct resulted in the death of one of the aliens, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iv), 1324(a)(1)(B)(iv), and 1324(a)(1)(A)(v)(1) (DE # 51).

The government has proffered that its evidence at trial will establish that at about 8:25 p.m. on September 23, 2008, Customs and Border Protection agents began tracking a target which was later determined to be two vessels tied together (DE # 1).[2] The first vessel was a 33-foot Scarab which appeared to have about 20 individuals on board; it was later learned that defendants Alexis Cervantes and Elieten Mendoza were on the Scarab along with 32 migrants. The Scarab had a satellite phone, Gatorade, and bottled water on board. The second vessel was a 31-foot Chris Craft; it was later learned that defendants Humberto Carrazana and Reynaldo Marquez were on the Chris Craft. A third vessel, a 25-foot Sea Fox, appeared on the scene about fifty minutes later, and tied up to

---

[2] It is unclear where the vessels were at the time the tracking began. According to the Complaint the vessels were about 40 miles west of Williams Island in the Bahamas and, according to the proffer of the Government at the hearing, they were east of the North Cuba coastal city of Las Tunas.

the other two vessels; it was later learned that defendants Arley Ceballo Gonzalez, Brainer Gomez Cruz and Michel Madrigal Lopez were on the Sea Fox.[3] An inventory of the Sea Fox later revealed that it had a satellite phone, a GPS device, 4 personal flotation devices, a comforter, one full 5-gallon gas tank, a flare kit, two fire extinguishers, an air horn, a pair of blue jeans, a snorkeling mask, a spear gun, 3 yo-yos for fishing, three rods and reels of different sizes and makes which were not rigged, one broken rod and assorted food.  Government agents saw people moving from vessel to vessel, and also saw fuel drums being thrown overboard.  Based upon these observations, as well as statements later made by migrants on board the Scarab that they had stopped to refuel several times, the government contends that the Scarab was being refueled at this time.  At about 10:00 p.m., all three vessels began moving on a northwest course, with the Sea Fox and the Chris Craft traveling in front of the Scarab.  The United States Coast Guard intercepted the three vessels at about 11:45 p.m., about 45 miles from Key Largo, Florida.  At that time, the Coast Guard learned that one of the migrants on the Scarab had suffered a head injury during the voyage; that migrant later died.

   Defendant Mendoza made a post-arrest statement that he and co-defendant Cervantes were testing Cervantes' boat when they saw people in the middle of a storm and rescued them because they were sinking.  Defendant Lopez made a post-arrest statement in which he stated that he had gone fishing with Ceballo Gonzalez and Gomez Cruz, that they had fished until the lines broke and it got dark, and that they returned to Miami because of the threat of bad weather. Lopez also said that he had seen the Coast

---

[3] Defense counsel proffered without contradiction that the vessel was a 28-foot Sea Fox, and that Ceballo Gonzalez was a passenger on board and was not the master.  It is unclear who the master of the vessel was.

**Guard and did not realize that the Coast Guard wanted him to stop; but that five minutes later they stopped.**

**II.     FRAMEWORK FOR ANALYSIS**

**In the Eleventh Circuit, the standard for admission of extrinsic bad act evidence under Rule 404(b) requires a showing that the evidence 1) is relevant to an issue other than the defendant's character; 2) is established by sufficient proof to permit a jury finding that the defendant committed the extrinsic act; and 3) the probative value of the evidence must not be substantially outweighed by unfair prejudice and must meet the other requirements of Rule 403.  *United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003); *United States v. Cancelliere*, 69 F.3d 1116 (11th Cir. 1995); *United States v. Delgado*, 56 F.3d 1357, 1365 (11th Cir. 1995), *citing United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978).**

**Numerous cases have upheld the admission of evidence of prior acts of alien smuggling for the purpose of showing that the defendant committed the charged offense in knowing fashion or with reckless disregard of the aliens' illegal status.  For example, in *United States v. Perez*, 443 F.3d 772, 778-80 (11th Cir. 2006), the Eleventh Circuit Court of Appeals upheld the admission of evidence of a 2002 alien smuggling conviction in the trial of a 2004 alien smuggling offense.  The prior conviction resulted from the activities of defendant Perez in providing fuel to a stranded boat which had onboard a number of Cuban nationals who were en route to the United States.  Perez had initially claimed that he was on a rescue mission, but later pled guilty.  The 2004 case for which Perez was on trial involved a scenario in which Cuban nationals were found hidden in the cabin of Perez's boat, following its arrival at Matheson Hammock marina in Miami-Dade County, Florida, and after the boat had been loaded onto a trailer.  In determining that the trial**

court had not abused its discretion in admitting evidence of the 2002 prior conviction, the Court provided the following analysis:

> The evidence of Perez's prior alien-smuggling conviction was relevant to establish his state of mind with respect to the conspiracy offense, as well as to the six substantive alien-smuggling counts. "One of the elements of conspiracy that the prosecution must establish beyond a reasonable doubt is an intention to further the purposes of the conspiracy." When a defendant charged with conspiracy enters a plea of not guilty, as in this case, he makes intent a material issue in the case. Perez did not "affirmatively take the issue of intent out of contention by stipulating that [he] possessed the requisite intent." . . . In fact, by his theory of defense–that he did not know the aliens' illegal status–he expressly made his knowledge and intent a focal point of the case, plainly making the evidence of his prior conviction admissible for non-propensity purposes. Moreover, the prior conviction was relevant to Perez's claim that the government did not carry its burden of establishing that he brought the aliens to the United States "knowing or in reckless disregard of the fact that [the aliens] ha[d] not received prior official authorization to come, enter or residence in the United States." See 8 U.S.C. § 1242(a)(2).
> . . . . Finally, we are satisfied the district court did not abuse its discretion when it determined the probative value of Perez's prior conviction, which involved *another* alien-smuggling offense *and* took place less than two years before the instant offense, outweighed its prejudicial effect. . . . This determination lies within the discretion of the district court and "calls for a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness."

443 F.3d at 779-80 (internal citations omitted). *Accord United States v. Hernandez-Guevara*, 162 F.3d 863, 869-74 (5th Cir. 1998) (upholding admissibility of two prior alien smuggling convictions, one in 1979 and one in 1996, to prove intent and lack of mistake in connection with charges related to alien smuggling in 1997); *United States v. Robles-Vertiz*, 155 F.3d 725, 730 (5th Cir. 1998) (evidence of defendant's prior conviction for smuggling aliens relevant and admissible to undercut defense that he thought he was

assisting a United States citizen and made an honest, good-faith mistake); *United States v. Ramirez-Jiminez*, 967 F.2d 1321 (9th Cir. 1992) (court upheld admission of evidence that defendant had previously been seen at residence used in the transportation of illegal aliens, in the company of an individual who was later arrested while driving a stolen truck which carried illegal aliens; where the defendant was charged with smuggling aliens in a stolen truck, and the aliens said that they had been taken to the truck from a "drop house").

Finally, evidence which pertains to the chain of events explaining the context, motive and set-up of a charged crime, or evidence which is necessary to complete the story of the crime is admissible as intrinsic evidence even when it is not part of the crime charged. *United States v. Fortenberry*, 971 F.2d 717, 721-22 (11th Cir. 1992); *United States v. Church*, 955 F.2d 688, 700 (11th Cir. 1992); *United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985). Since such evidence is viewed as intrinsic to the crime charged, it is not subject to a Rule 404(b) analysis.

### III. THE PROPOSED 404(b) EVIDENCE IN THE CASE AT BAR

There are three separate uncharged incidents which the government seeks to use as evidence in the case at bar to prove the defendants' motive, intent, and knowledge; and, to rebut a mere presence or rescue defense. At the outset of its argument, however, the government stated that it had not definitely decided that it would seek to use this evidence at trial; rather, its decision would be based upon the defense mounted at the trial.[4] Each of the incidents is discussed below based upon the proffer provided by the

---

[4] The government's expectation that a mere presence or rescue defense would be asserted was based, at least in part, on the fact that defendant Mendoza made a post-arrest statement that he and co-defendant Cervantes were testing Cervantes' boat when they saw people in the middle of a storm and rescued them because they were sinking;

government. At the outset, the undersigned notes that all of these events involved the presence of one or more of the defendants on a vessel that did not have migrants on board and which did not result in any arrests; but which the government argues appeared to be equipped to take part in a smuggling venture similar to the smuggling activity charged in the case at bar. The government does not seek to introduce any expert testimony which would link the appearance and circumstances under which these vessels were stopped to alien smuggling ventures, but contends that they are similar enough to the facts in the case at bar to demonstrate that this was the purpose of those voyages.

    A. **United States Coast Guard Stop on October 22, 2007 of Ceballo Gonzalez**

On October 22, 2007, the United States Coast received information regarding a vessel that was leaving the vicinity of Havana, Cuba. A short time later, the U.S. Coast Guard Cutter Vigilant located a 26-foot angler approximately 28 miles north of Havana, and 120 nautical miles from Marathon, Florida. The vessel was headed northbound, and was running without navigation lights at night. Defendant Ceballo Gonzalez was the master of the vessel, and there were two crewmembers–Lazaro Rodriguez-Gil and Lazaro Falcon. The crewmembers stated that they had departed Marathon, Florida on October 21, 2007, to go fishing. There was no bait or tackle on board the vessel, and the Coast Guard was told that the bait and tackle had fallen overboard. There were fifteen adult life jackets, home made gas tanks, an iridium satellite phone and bottles of water and soda in

---

and defendant Lopez said that he and co-defendants Ceballo Gonzalez and Gomez Cruz had gone fishing. The undersigned notes that Cervantes will be entering a plea of guilty, and therefore the government is no longer seeking to introduce 404(b) evidence against Cervantes; and, there is no 404(b) evidence proposed against defendant Mendoza. it is presently unclear what defenses will be asserted by Ceballo Gonzalez or Carrazana, the defendants who are the subjects of the 404(b) evidence at issue here.

the bait wells. There was no smell of fish in the bait wells. Ceballo was extremely seasick and the other individuals advised the Coast Guard that they could not navigate the vessel. The Coast Guard terminated the voyage due to safety violations, and the three individuals on board were transferred to United States Border Protection custody.

  B. <u>United States Coast Guard Stop on January 24, 2008 of Carrazana</u>

On January 24, 2008, a Customs and Border Protection airplane detected a vessel heading southbound towards Cuba, with a heading that would lead to an area between Havana and Matanzas. The vessel was a 29-foot center console type, with defendant Carrazana and another individual on board. The boat was traveling at 36 knots, at night, with its navigational lights off. After the airplane detected the vessel, it stopped in the water. The vessel then continued on a southwest course at 15 knots. Apparently the Coast Guard lost track of the vessel briefly, and then relocated the vessel traveling northbound at 35 knots on a track back toward the United States. The voyage terminated at Big Pine Key, Florida.

The government contends, based on the coordinates that can be plotted, that the vessel left the United States and proceeded toward Cuba as far south as 23º27' N, 081º50'W, and terminated its attempt to enter near the Cuban shore at night with no navigational lights on because it was being tracked by aircraft.

  C. <u>United States Coast Guard Stop on June 18, 2008 of Defendants Cervantes, Madrigal Lopez and Ceballo Gonzalez</u>

On June 18, 2008, defendants Cervantes, Madrigal Lopez and Ceballo Gonzalez, along with two other individuals, were stopped by the Coast Guard on a 25-foot Sea Fox vessel, approximately 8.5 miles east of Sands Cut, Elliott Key, Florida. The vessel had been tracked by the United States Coast Guard as running at 30 knots without its

navigational lights on; approximately 25 minutes later the vessel turned on its navigational lights.  The vessel did not initially respond to being hailed by the Coast Guard to stop; the government proffered that none of the present defendants was the master of this vessel, but the identity of the master of the vessel is unknown.  The vessel had twin outboard motors, seven 15-gallon fuel containers, and two satellite telephones on board.  The government has no evidence regarding whether there was any fishing tackle, bait or other indicia of a legitimate fishing trip on board, or whether the fuel drums were empty or full.[5]  The government contends that this boat has indicia of an aborted alien smuggling venture based on its travel without navigation lights, its failure to stop when hailed by the Coast Guard, the presence of two satellite phones, and the empty fuel containers.

The government first contends that this evidence is inextricably intertwined with the charged conduct since it is essential to complete the story of the crime at trial.  The government argues that this evidence explains how the three individuals know each other, refutes the statements from Lopez as well as the expected defenses, and explains why the three were together on September 23 and 24, 2008 (the dates of the charged offenses).  In the alternative, the government argues that the evidence is admissible under Rule 404(b) since it is relevant to prove the defendants' intent, motive and knowledge and refutes the mere presence and rescue defenses, and shows the relationship between the defendants.

---

[5] The government initially advised the Court that this vessel had been seized for administrative forfeiture, and that an inventory of what was on the vessel would be filed with the Court (DE # 133 at 4 n.7).  However, the government subsequently corrected this statement and filed a notice that the vessel had not been seized and there was no inventory (DE # 135).

## IV. LEGAL ANALYSIS

As stated above, the Eleventh Circuit Court of Appeals has endorsed a three-step analysis to determine whether evidence of other bad acts is admissible. First, the government must establish that the evidence is relevant to an issue other than the defendant's character. Each of the above incidents appears to meet this requirement since they will be used to show the relationship among the defendants, their boating experience, and their intent to commit the charged crimes. The circumstances under which vessels which were stopped in all three of the above instances are very similar to the circumstances surrounding the stop of the three vessel traveling together in the case at bar, and all are indicative of attempts to engage in or assist alien smuggling from Cuba to South Florida.

Second, the government must establish that the defendant committed the extrinsic act. This requirement has also been met–the government will rely upon the identification by the Coast Guard officers who stopped each vessel of each of the defendants present at the time of the stop.

Finally, the probative value of the evidence must not be substantially outweighed by unfair prejudice, and must meet the other requirements of Rule 403. Initially, the undersigned finds that the evidence regarding the June 18, 2008 vessel stop is directly relevant to the charges in the case at bar since it establishes that there is a sea-going relationship between three of the defendants charged in the case at bar–two of whom were on the Sea Fox (Ceballo Gonzalez and Madrigal Lopez); and one of whom was on the Scarab which carried the migrants (Cervantes). This alone makes the probative value of this evidence very strong. Moreover, there are striking similarities between the June 18, 2008 voyage of the Sea Fox and the voyage in the case at bar due to the presence of

fuel containers, and satellite phones, and the suspicious activities of the Sea Fox which included running at night with no navigation lights and the failure to immediately heave to when hailed by the Coast Guard.  In addition, the probative value of this evidence is not outweighed by unfair prejudice.  The evidence that these defendants had committed a crime during the June 18, 2008 voyage is not strong or egregious; and it is unlikely to have undue influence on the jury.  Thus, whether the evidence is characterized as intrinsic due to the direct probative value of showing the relationship among defendants who were on different boats in the present case; or, whether it is considered extrinsic since there is no direct evidence of a tie between the two voyages, the undersigned finds that this evidence is admissible.

      The probative value of the remaining two incidents is much weaker since it does not show a connection among these defendants, and there were no aliens found on these vessels.  It does, however, show a familiarity with boating and the area of the high seas near Cuba, and the circumstances are such that these prior trips are probative of an intent to smuggle aliens from Cuba to the United States.  Both incidents occurred within one year of the charged offense, and are therefore not temporally remote.  The circumstances of these extrinsic events are not egregious, and are not unduly prejudicial due to the weakness of the evidence to establish intent to smuggle aliens.

      Based upon the foregoing analysis, the undersigned finds that the threshold prerequisites for admissibility of this evidence pursuant to Rule 404(b) have been met, and therefore the motion to strike should be denied.  However, the undersigned recognizes that this determination is made, in part, based upon speculation of what the defenses in this case will be.  Thus, the trial court will be in a better position to make an ultimate determination of admissibility based on whether the issue of intent has become

a material issue in the case with respect to these two defendants, and how substantial the need for this evidence is. In addition, the government has indicated that it may or may not seek to introduce this evidence, depending on the defenses that are put forth. Therefore, the undersigned concludes that although the government has met the basic requirements for the introduction of Rule 404(b) evidence, and therefore the motion to strike should be denied, this denial is without prejudice to the defendants' right to seek exclusion of this evidence at the trial.

## V.   CONCLUSION

Therefore, based upon the above analysis, and on a review of the record as a whole, the undersigned Magistrate Judge does hereby

**ORDER AND ADJUDGE** that Defendant Arley Ceballo Gonzalez' Motion to Strike 404(b) Evidence (DE # 120), adopted by defendant Humberto Carrazana (DE # 128), is **DENIED WITHOUT PREJUDICE**.

**DONE AND ORDERED** in chambers at Miami, Florida this 7th day of January, 2009.

*Andrea M. Simonton*
_____
**ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE**

**Copies to:**
The Honorable K. Michael Moore, United States District Judge
All counsel of record via CM/ECF